﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 191112-44942
DATE: August 31, 2020

ORDER

An initial rating in excess of 10 percent for left wrist tendonitis, associated with fibromyalgia, is denied.

An initial rating in excess of 10 percent for right wrist tendonitis, associated with fibromyalgia, is denied. 

A rating in excess of 40 percent for fibromyalgia under Diagnostic Code 5025 is denied.

Service connection for sleep disturbance and resulting fatigue, associated with fibromyalgia, is granted.

REMANDED

Entitlement to service connection for right shoulder tendonitis is remanded.

Entitlement to service connection for a neck disability, including degenerative disc disease of the cervical spine is remanded.

Entitlement to service connection for left shoulder tendonitis is remanded.

Entitlement to service connection for left knee tendonitis is remanded.

Entitlement to service connection for right knee tendonitis is remanded.

Entitlement to service connection for a back disability, to include lumbar degenerative disc disease and lumbar strain, is remanded.

Entitlement to an initial rating in excess of 10 percent for right elbow tendonitis, triceps tendonitis, associated with fibromyalgia, is remanded.

Entitlement to an initial rating in excess of 10 percent for left elbow tendonitis, triceps tendonitis, associated with fibromyalgia, is remanded.

Entitlement to an initial rating in excess of 30 percent for migraine headaches, associated with fibromyalgia, is remanded.

FINDINGS OF FACT

1. The Veteran is in receipt of the highest rating for limitation of motion of the wrists, there is no evidence of ankylosis, and the evidence shows no more than slight impairment of muscle function in the wrists. 

2. The 40 percent rating assigned is the highest available rating for fibromyalgia under Diagnostic Code 5025.

3. The evidence shows the Veteran’s service-connected fibromyalgia causes sleep disturbance with resulting fatigue.

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for left wrist tendonitis, related to fibromyalgia, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5215.

2. The criteria for a rating in excess of 10 percent for right wrist tendonitis, related to fibromyalgia, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, DC 5215.

3. A rating in excess of 40 percent for fibromyalgia is not warranted. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.71a, DC 5025.

4. The criteria for service connection for sleep disturbance and resulting fatigue, as associated with fibromyalgia, have been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.303, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Army from August 1961 to August 1963 and November 1990 to May 1991.

In the November 2019 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the October 2019 agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301.

The Board notes that in addition to the issues listed above, the VA Form 10182 identified disabilities of PTSD/anxiety, skin, and gastrointestinal conditions. The AOJ denied service connection for a mental condition, irritable bowel syndrome, and a skin condition in a January 2019 rating decision. The October 2019 rating decision did not adjudicate those claims. The Veteran’s VA Form 10182 identified only the October 2019 decision, not the January 2019 decision, as the decision he wished to appeal. Accordingly, the January 2019 decision, including the denials of service connection for mental disorder, irritable bowel syndrome, and skin condition, is not currently on appeal before the Board. See 38 C.F.R. § 20.202. The Veteran may file a Supplemental Claim and request those issues be readjudicated by the AOJ. Instructions for filing a Supplemental Claim are included with this decision.

Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and criteria for specific ratings. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

In determining the propriety of the initial rating assigned after a grant of service connection, the evidence since the effective date of the grant of service connection must be evaluated and staged ratings must be considered. Staged ratings are appropriate when the evidence establishes that the claimed disability manifested symptoms that would warrant different ratings for distinct time periods during the course of the appeal. Fenderson v. Brown, 12 Vet. App. 119, 126-127 (1999).

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other. Esteban v. Brown, 6 Vet. App. 259, 262 (1994); 38 C.F.R. § 4.14.

The Veteran is competent to give evidence of symptoms observable by his senses. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

1. Ratings in excess of 10 percent for left and right wrist tendonitis, related to fibromyalgia

The Veteran contends the ratings for his left and right wrist should be higher. Specifically, his representative asserts he should receive separate ratings for moderate impaired flexion and extension based on Diagnostic Codes 5307 and 5308.

The Veteran’s wrist disabilities are currently rated 10 percent under Diagnostic Code 5215, which provides for 10 percent ratings based on limitation of dorsiflexion and palmar flexion. 38 C.F.R. § 4.71a, DC 5215.

Diagnostic Codes 5307 and 5308 address disabilities of muscle groups VII and VIII affecting flexion and extension of the wrist and fingers. Slight impairment receives a zero, noncompensable rating and moderate impairment receives a 10 percent rating under both Diagnostic Codes. See 38 C.F.R. § 4.73, DC 5307, 5308. 

For disabilities based on limitation of motion, VA is to apply the provisions of 38 C.F.R. §§ 4.40, 4.45, pertaining to functional impairment. The Court has instructed that in applying these regulations VA should obtain examinations in which the examiner determined whether the disability was manifested by weakened movement, excess fatigability, incoordination, or pain. Such inquiry is not to be limited to muscles or nerves. These determinations are, if feasible, be expressed in terms of the degree of additional loss-of-motion due to any weakened movement, excess fatigability, incoordination, flare-ups, or pain. Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011); DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Johnston v. Brown, 10 Vet. App. 80, 84-85 (1997); Southall-Norman v. McDonald, 28 Vet. App. 346, 354 (2016) (stating that “the plain language of § 4.59 indicates that it is applicable to the evaluation of musculoskeletal disabilities involving actually painful, unstable, or malaligned joints or periarticular regions, regardless of whether the DC under which the disability is being evaluated is predicated on range of motion measurements”); 38 C.F.R. § 4.59.

Based on the evidence, the Board finds ratings in excess of 10 percent for right and left wrist tendonitis are not warranted. See 38 C.F.R. §§ 4.71a, DC 5215; 4.73, DC 5307 and 5308.

The October 2019 VA examiner measured all normal range of motion in the right and left wrists on initial and repeated testing. The Veteran reported pain and weekly flare-ups of pain lasting for hours. The examiner measured the Veteran’s wrist strength on flexion and extension as 4/5 for active movement against some resistance. The examiner found no evidence of muscle atrophy. VA treatment records are silent for complaints or treatment for the wrists. 

As the evidence does not show a compensable level of limitation of palmar flexion or dorsiflexion (extension), the 10 percent ratings assigned represent an award of the minimum compensable rating based on painful motion and functional limitation pursuant to 38 C.F.R. § 4.59. Moreover, as noted above, 10 percent is the sole, and highest, rating based on limitation of motion under Diagnostic Code 5215. The Veteran could not receive a higher rating under that Diagnostic Code regardless of the severity of his flare-ups or functional loss due to pain. There is no evidence of ankylosis that would warrant a rating under Diagnostic Code 5214. 

When considering a rating under Diagnostic Codes 5307 and 5308, the Board finds the evidence does not show more than slight impairment. The Veteran’s wrists exhibited active movement against resistance. He has not reported in statements to VA adjudicators or treating providers that he experiences any functional impairment, such as impairment of grasping, carrying, or manual dexterity that would evidence more than slight impairment of muscle function. While not dispositive, the Board further notes that the evaluations for strength include six levels – 5, 4, 3, 2, 1, 0 – that reasonably correspond to normal or no impairment, slight impairment, moderate impairment, moderately-severe impairment, severe impairment, and complete atrophy or loss of use, with 4/5 representing slight impairment. Accordingly, the Board finds the evidence is most consistent with slight impairment of the muscles and zero, or noncompensable, ratings under Diagnostic Codes 5307 and 5308. 

As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is inapplicable, and ratings in excess of 10 percent for right and left wrist tendonitis are denied. See 38 U.S.C. § 5107; 38 C.F.R. §§ 4.71a, DC 5215. 

2. A rating in excess of 40 percent for fibromyalgia

The Veteran was previously rated 40 percent for fibromyalgia under Diagnostic Code 5025 until February 7, 2019, at which time the AOJ granted separate ratings based on fibromyalgia symptoms in the wrists and elbows, which combined to 40 percent. Fibromyalgia is specifically listed in the schedule for rating disabilities under Diagnostic Code 5025. Diagnostic Code 5025 provides for a maximum, 40 percent rating for fibromyalgia with widespread musculoskeletal pain and tenderness points, with or without associated fatigue, sleep disturbance, stiffness, paresthesias, headache, irritable bowel syndrome, depression, anxiety, or Raynaud’s-like symptoms that are constant, or nearly so, and refractory to therapy. 38 C.F.R. § 4.71a, DC 5025. 

The Board finds a rating in excess of 40 percent is not available for the Veteran’s fibromyalgia. As noted, the 40 percent rating assigned is the maximum allowed under Diagnostic Code 5025. Moreover, as fibromyalgia is specifically listed in the rating schedule, rating by analogy under another Diagnostic Code is not appropriate. See Copeland v. McDonald, 27 Vet. App. 333, 336-37 (2015). The Veteran has not reported any symptoms not covered by the rating criteria for fibromyalgia. Accordingly, a rating in excess of 40 percent is not warranted. See 38 C.F.R. § 4.71a, DC 5025. 

Service Connection

3. Service connection for sleep disturbance and resulting fatigue

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted on a secondary basis for a disability that is proximately due to or the result of (caused) or worsened beyond its natural progression (aggravated) by a service-connected disease or injury. 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439, 448-49 (1995) (en banc).

The Board must consider all the evidence of record and make appropriate determinations of competence, credibility, and weight. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). When there is an approximate balance of positive and negative evidence regarding any material issue, all reasonable doubt is resolved in favor of the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

The Veteran is competent to describe symptoms observable to his senses. See Jandreau, 492 F.3d at 1377. 

Based on the evidence, the Board finds the criteria for service connection for sleep disturbance and fatigue have been met. 38 C.F.R. §§ 3.303, 3.310.

The evidence shows sleep impairment and fatigue related to service-connected fibromyalgia. During the October 2019 examination for fibromyalgia, the examiner diagnosed sleep disturbance as a symptom of fibromyalgia. Additionally, the Veteran has claimed fatigue, which is an experience readily observable by his senses. However, the October 2019 examiner found he did not meet the criteria for diagnosis of chronic fatigue syndrome. Indeed, the Veteran denied having loss of energy after walking for exercise and instead reported sleeping very little. Thus, the evidence shows the Veteran has sleep disturbance, which appears to be the cause of his reported fatigue. The Veteran is service connected for fibromyalgia, and the VA examiner attributed his sleep disturbance to fibromyalgia. There is no evidence refuting the examiner’s findings. As such, service connection for sleep disturbance and resulting fatigue is warranted on a secondary basis. 

The Board notes that fatigue and sleep disturbance, along with widespread musculoskeletal pain and headache, are enumerated under the rating criteria for fibromyalgia. See 38 C.F.R. § 4.71a, DC 5025. In this case, however, the AOJ has decided to rate the Veteran’s fibromyalgia separately based on the different sets of symptoms, changing the Diagnostic Code from 5025 to 5215 for the wrists, 5206 for the elbows, and 8100 for headaches. The AOJ should determine whether a separate rating is warranted for fibromyalgia symptoms of sleep disturbance and fatigue. 

REASONS FOR REMAND

1. Entitlement to service connection for right shoulder tendonitis is remanded.

2. Entitlement to service connection for a neck disability, including degenerative disc disease of the cervical spine is remanded.

3. Entitlement to service connection for left shoulder tendonitis is remanded.

4. Entitlement to service connection for left knee tendonitis is remanded.

5. Entitlement to service connection for right knee tendonitis is remanded.

6. Entitlement to service connection for a back disability, to include lumbar degenerative disc disease and lumbar strain, is remanded.

The Board finds remand is necessary to correct a pre-decision duty to assist error. Specifically, the Board finds new examinations and medical opinions are needed for the above issues.

The Veteran contends he has disabilities of his neck, shoulders, knees, and low back that are due to his service-connected fibromyalgia. The October 2019 examiners of the back, knees, shoulders, and neck diagnosed lumbar strain, lumbar degenerative disc disease, bilateral knee tendonitis/tendinosis, cervical degenerative disc disease, and bilateral shoulder tendinitis, but opined that these disabilities were less likely than not caused by service-connected fibromyalgia. The examiners did not, however, provide opinions as to whether service-connected fibromyalgia could aggravate, or worsen, these disabilities. An addendum opinion on aggravation is required. See Allen, 7 Vet. App. at 439.

Additionally, the evidence is unclear as to which joints are affected by the Veteran’s fibromyalgia, and the Board finds additional information would be helpful. During the October 2019 fibromyalgia examination, the examiner identified tender points in the low cervical region, second rib on both sides, both suboccipital muscles, both trapezius muscles, both supraspinatus muscles, lateral epicondyle and gluteal muscles, greater trochanter muscles, and the medial joint line of both knees. During the October 2019 wrist examination, the examiner noted the Veteran had fibromyalgia with tender points in his wrists, elbows, and shoulders. Nevertheless, the examiner rendered an opinion that the Veteran’s fibromyalgia only affected his wrists and elbows. Clarification would be useful. 

7. Entitlement to an initial rating in excess of 30 percent for migraine headaches is remanded.

Remand of the headache claim is also needed to correct a pre-decisional error and obtain a more accurate examination. The Veteran was afforded an examination for his headaches in October 2019 during which the examiner noted that the Veteran took medication to help control his headaches. In the August 2020 brief, the Veteran’s representative asserted that the severity of the Veteran’s disability must be considered without the ameliorative effects of medication. The Board finds a new examination is needed to determine if the Veteran would experience more frequent prostrating attacks, productive of severe economic inadaptability, if he did not use medication. See Jones v. Shinseki, 26 Vet. App. 56, 63 (2012). 

8. An initial rating in excess of 10 percent for right elbow tendonitis, triceps tendonitis, associated with fibromyalgia, is remanded.

9. An initial rating in excess of 10 percent for left elbow tendonitis, triceps tendonitis, associated with fibromyalgia, is remanded.

Remand of the claims for increased ratings for the elbow disabilities is also needed to correct a pre-decisional error and obtain an adequate examination. The Court of Appeals for Veterans Claims (Court) in Correia found that for disabilities rated based on limitation of motion, an examination is inadequate if it does not consider “active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint” in accordance with 38 C.F.R. § 4.59. See Correia v. McDonald, 28 Vet. App. 158, 169-70 (2016). The October 2019 examination of the elbows does not include measurements with passive motion and weight-bearing motion. Therefore, the AOJ should obtain a new VA examination in compliance with Correia.

The matters are REMANDED for the following action:

1. Obtain new medical opinions for the low back, neck, bilateral shoulder, and bilateral knee claims. The medical expert should review the record and address the following:

a. Are the Veteran’s lumbar strain, lumbar spine degenerative disc disease, cervical spine degenerative disc disease, shoulder tendonitis, knee tendonitis/tendinosis, and/or any other current disabilities in the low back, neck, shoulders, and knees at least as likely as not caused by service-connected fibromyalgia?

b. Were the Veteran’s lumbar strain, lumbar spine degenerative disc disease, cervical spine degenerative disc disease, shoulder tendonitis, knee tendonitis/tendinosis, and/or any other current disabilities in the low back, neck, shoulders, and knees at least as likely as not aggravated (worsened) by service-connected fibromyalgia? If aggravation is found, provide a baseline level of disability prior to aggravation.

Consider all relevant lay and medical evidence, including the October 2019 examination findings of fibromyalgia tender points in the low cervical region, second rib on both sides, both suboccipital muscles, both trapezius muscles, both supraspinatus muscles, lateral epicondyle and gluteal muscles, greater trochanter muscles, and the medial joint line of both knees. All opinions must be supported by detailed rationale. If the opinion cannot be provided without resort to speculation, the examiner should explain why, and state whether the inability is due to the absence of evidence or limits of scientific/medical knowledge.

2. Schedule the Veteran for an examination for his migraine headaches. The examiner should measure and record all subjective complaints and objective findings. The examiner should discuss whether the Veteran would experience very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability without the ameliorating effects of medication, i.e. if he did not use medication. The opinion should be explained with rationale.

3. Schedule the Veteran for an examination of his elbows. The examiner should report all signs and symptoms necessary for evaluation of the Veteran’s elbow disability under the rating criteria. In particular, the examiner should provide range of motion test results (in degrees) on active motion, passive motion, weight-bearing, and nonweight-bearing.

The examiner should offer an opinion as to whether pain could significantly limit functional ability during flare-ups or when the joint is used repeatedly over a period of time. The examiner should specifically indicate whether the Veteran experiences any limitation of motion that is attributable to pain and at what point during the range of motion. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

The examiner is asked to describe whether pain significantly limits functional ability during flares and, if so, the examiner must estimate the range of motion during flares. IF THE EXAMINATION DOES NOT TAKE PLACE DURING A FLARE, THE EXAMINER MUST GLEAN INFORMATION REGARDING THE FLARES’ SEVERITY, FREQUENCY, DURATION, AND FUNCTIONAL LOSS MANIFESTATIONS FROM THE VETERAN, MEDICAL RECORDS, AND OTHER AVAILABLE SOURCES. EFFORTS TO OBTAIN SUCH INFORMATION MUST BE DOCUMENTED. If there is no pain and/or no limitation of function, such facts must be noted in the report.

The examiner is advised that the Veteran is competent to report her symptoms and history, and such reports must be considered. If the examiner rejects the Veteran’s reports, the examiner must provide a reason for doing so

 

 

A. S. CARACCIOLO

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A.P. Armstrong, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.