﻿Citation Nr: AXXXXXXXX
Decision Date: 06/25/19 Archive Date: 06/21/19

DOCKET NO. 181031-1088
DATE: June 25, 2019

ORDER

Entitlement to a disability rating in excess of 10 percent for adjustment disorder with anxiety (previously rated as dysthymic disorder, mild) is denied. 

Entitlement to a disability rating of 30 percent, but no higher, for migraine headache, status post head trauma, is granted. 

FINDINGS OF FACT

1. The Veteran’s adjustment disorder with anxiety manifested through occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication.

2. The Veteran has had at least one characteristic prostrating headache a month, but without severe economic inadaptability.

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for adjustment disorder with anxiety have not been met. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. § 4.3, 4.7, 4.10, 4.130, Code 9440. 

2. The criteria for a 30 percent rating for migraine headaches are met; the criteria for a rating in excess of 30 percent have not been met. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 4.3, 4.10, 4.124a, Code 8100.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from January 1973 to December 1986, and from March 1990 to September 1994. 

In January 2018, the Veteran elected the modernized review system. 38 C.F.R. § 19.2(d) (eff. Feb. 19, 2019). The Veteran selected the Higher-Level Review lane when she opted into the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form, received by VA in January 2018. Accordingly, the February 2018 AMA rating decision considered the evidence of record as of the date the Department of Veterans Affairs (VA) received the RAMP election form. The Veteran timely appealed this rating decision to the Board and selected the evidence submission lane (no hearing). See 03/23/2018, VA 21-4138; see also 11/24/2018, RAMP 

Opt-in Election.

The Board notes that evidence was added to the claims file during a period of time when new evidence was not allowed (after the 90-day period from the election for Board review, evidence lane, in November 2018). Therefore, the Board may not consider this evidence. 38 C.F.R. § 20.300 (eff. Feb. 19, 2019). The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501 (eff. Feb. 19, 2019). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

 

Increased Rating

Disability ratings are determined by applying the criteria set forth in the 

VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentages are based on the average impairment of earning capacity as a result of service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

In determining the propriety of the initial disability rating assigned after a grant of service connection, the evidence since the effective date of the award must be evaluated and staged ratings must be considered. Staged ratings are appropriate when the evidence establishes that the claimed disability manifested symptoms that would warrant different ratings for distinct periods during the course of the appeal. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999).

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other. Esteban v. Brown, 6 Vet. App. 259, 262 (1994); 38 C.F.R. § 4.14.

The Veteran is competent to report symptoms and experiences observable by his or her senses. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); 38 C.F.R. § 3.159(a).

 

1. Entitlement to a disability rating in excess of 10 percent for adjustment disorder with anxiety, from February 13, 2015, to January 8, 2018.

The Veteran contends that she is entitled to a rating in excess of 10 percent for adjustment disorder with anxiety, evaluated under Diagnostic Code 9440.

Psychiatric disabilities are rated based on the General Rating Formula codified in 38 C.F.R. § 4.130, which provides disability ratings based on a spectrum of symptoms. “A veteran may qualify for a given disability rating by demonstrating the particular symptoms associated with that percentage, or others of a similar severity, frequency, and duration.” Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (Fed. Cir. 2013). VA must consider all symptoms of a claimant’s condition that affect the level of occupational and social impairment, including, if applicable, those identified in the American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV) and (5th ed. 2013) 

(DSM-5). See Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). 

The United States Court of Appeals for Veterans Claims (Court) has observed that the listed symptoms are examples of the type and degree of the manifestations of a mental disability required for a given disability rating, and that “the presence of all, most, or even some, of the enumerated symptoms” is not required to support a disability rating. Mauerhan, 16 Vet. App. at 442. Accordingly, it is not sufficient for the Board to simply match the symptoms listed in the rating criteria against those exhibited by a veteran. Rather, “VA must engage in a holistic analysis” of the severity, frequency, and duration of the signs and symptoms of the veteran’s mental disorder, determine the level of occupational and social impairment caused by those signs and symptoms, and assign an evaluation that most nearly approximates that level of occupational and social impairment. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017).

Under the General Rating Formula, in pertinent part, the next-higher 30 percent disability rating is warranted when there is occupational and social impairment with occasional decreases in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130.

A 50 percent rating is warranted if the disability is productive of occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material; forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130.

A 70 percent rating is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. 38 C.F.R. § 4.130.

The criteria for a 100 percent rating are: total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130.

Considerations in evaluating a mental disorder include the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during periods of remission. The evaluation must be based on all evidence of record that bears on occupational and social impairment rather than solely on an examiner’s assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a). Although the extent of social impairment is a consideration in determining the level of disability, the rating may not be assigned solely on the basis of social impairment. 38 C.F.R. § 4.126(b).

The February 2018 AMA rating decision continued the evaluation of adjustment disorder with anxiety at 10 percent disabling. This rating decision does not reflect any favorable findings.

As noted above, in order to warrant a higher rating, the Veteran’s disability would have to be manifested by occupational and social impairment with occasional decreases in work efficiency and intermittent periods of inability to perform occupational tasks.

The Veteran was afforded a VA examination in June 2015, in which the Veteran was diagnosed with adjustment disorder with anxiety. The examiner noted that this diagnosis is a progression of her dysthymic disorder. The examiner found the Veteran to have occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication. Anxiety was the only noted symptom of this diagnosis. 

The examiner noted that the Veteran’s condition improves with medication. With regard to behavioral observations, the Veteran was reportedly alert and oriented in all spheres, no psychomotor retardation was noted, and she demonstrated good concentration and memory. The Veteran’s speech was fluent, adequately organized, and of normal volume, rate, and tone. Her thinking was linear and there was no evidence of psychosis. She denied any current thoughts of suicide or homicide. Her gross functioning was intact, and her insight, judgement, and impulse control appeared adequate. The Veteran described difficulty sleeping and significant anxiety, and these symptoms would increase in situation where she feels she does not have control or is being taken advantage of. The veteran reported experiencing depressed mood several times per month, as well as frustration related to losing focus at work. She lived with her husband of 21 years and took care of her mother. He described relating well to her family and being involved in her church. 06/11/2015, C&P Exam.

The VA treatment records reveal that, in March 2015, the Veteran was prescribed medication for her adjustment disorder diagnosis. Likewise, in March 2015 and April 2015, the Veteran was reportedly utilizing active coping strategies, including relaxation and improved self-care, to treat her condition during high stress situations at work. 06/15/2015, CAPRI, pages 2-4. 

After review of the competent and probative evidence, the Board finds a rating in excess of 10 percent for adjustment disorder with anxiety is not warranted. Throughout the period on appeal, the Veteran’s adjustment disorder with anxiety manifested through occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication. The June 2015 VA examination noted anxiety as a symptom. The examiner also noted the Veteran’s remarks that her symptoms tend to increase during periods of significant stress, particularly at work, but found that her condition improves with medication and treatment. The Board places great probative weight on evidence, as its corroborated by the VA treatment records, which reveal that the Veteran used coping techniques to treat her symptoms during high stress situations. Likewise, the Veteran was not noted to have symptoms of suspiciousness, panic attacks, or memory loss. The Board acknowledges the Veteran’s contentions regarding difficulty sleeping and depressed mood. However, the June 2015 VA examination acknowledged these reported symptoms in reaching the conclusion regarding the Veteran’s occupational and social impairment. 

Given the above, the Board finds that when viewed against the all of the relevant competent medical and lay evidence of record, the Veteran’s overall disability picture is more nearly approximated by the 10 percent evaluation. Therefore, after looking at the totality of the Veteran’s adjustment disorder with anxiety disability picture, the Board finds that the evidence warrants a rating of 10 percent throughout the appeals period. 38 U.S.C. § 5107(b); 38 C.F.R. § 4.3.

2. Entitlement to a disability rating in excess of 10 percent for migraine headache, status post head trauma, from February 13, 2015, to January 8, 2018.

The Veteran contends that she is entitled to a rating in excess of 10 percent for migraine headache, status post head trauma, evaluated under Diagnostic Code 8100.

Under Diagnostic Code 8100, migraine headaches with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability are evaluated as 50 percent disabling. Migraine headaches with characteristic prostrating attacks occurring on an average once a month over the last several months are 30 percent disabling. Migraine headaches with characteristic prostrating attacks averaging one in two months over the last several months are 

10 percent disabling. When there are less frequent attacks, a zero percent rating is assigned. 38 C.F.R. § 4.124a, Code 8100.

In its decision in Johnson v. Wilkie, the U.S. Court of Appeals for Veterans Claims (Court) concluded that Diagnostic Code 8100 is successive, meaning that “each disability level builds on another in terms of duration and frequency, requiring a veteran rated at a higher level to satisfy all the requirements of the lower levels.” 30 Vet. App. 245, 253 (2018). The Court also held that the rating criteria for a 50 percent disability rating under Diagnostic Code 8100 are conjunctive, meaning that establishing entitlement to a 50 percent disability rating requires evidence that a claimant’s migraine attacks are (1) very frequent, (2) completely prostrating and prolonged, and (3) “productive of severe economic inadaptability.” Id. If one of these elements is missing, a claimant is not entitled to a 50 percent disability rating. See Camacho v. Nicholson, 21 Vet. App. 360, 366 (2007). Finally, the Court concluded that, because Diagnostic Code 8100 contains successive rating criteria, § 4.7 and § 4.21 are not applicable. Id. The Court determined, however, that § 4.3 is not “incompatible with the nature of successive rating criteria.” Id. 

The Board observes that the rating criteria do not define “prostrating.” Dorland’s Illustrated Medical Dictionary defines “prostration” as “extreme exhaustion or powerlessness.” See DORLAND’S ILLUSTRATED MEDICAL DICTIONARY 1531 (32nd ed. 2012). The phrase “characteristic prostrating attacks” plainly describes migraine attacks that typically produce powerlessness or a lack of vitality. Johnson, 30 Vet. App. at 253. Similarly, the rating criteria also do not define “severe economic inadaptability.” However, the Court has stated that this term is not synonymous with being completely unable to work and VA has conceded that the phrase “productive of” could be read to mean either “producing” or “capable of producing” economic inadaptability. See Pierce v. Principi, 18 Vet. App. 440, 446-47 (2004) (stating that “nothing in DC 8100 requires that the claimant be completely unable to work in order to qualify for a 50 percent rating”).

Additionally, “Characteristic” is “a trait, quality, or property or a group of them distinguishing an individual, group, or type.” WEBSTER’S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 376 (1966) [hereinafter “ Webster’s”]. “Prostrating” means “lacking in vitality or will: powerless to rise: laid low.” Id. at 1822. “Completely” is defined as “to complete degree: entirely.” Webster’s at 465. In other words, the headaches must render the veteran entirely powerless. Johnson, 30 Vet. App. at 253. “Frequent” can mean “happening at short intervals” or “acting or returning regularly or often” per dictionary definition. See Merriam-Webster, Frequent (adj.), at https://www.merriam-webster.com/dictionary/frequent (last visited June 21, 2019).

The Veteran was afforded a VA examination in June 2015. The examiner confirmed the diagnosis of migraines including migraine variants. The Veteran reported experiencing migraine headaches at least two to three times per month, and sometimes more than once a week. The noted symptoms include headache pain, pulsating or throbbing head pain, pain on both sides of the head, nausea, and sensitivity to light. The duration of a typical head pain is less than one day. The examiner noted that the Veteran does have characteristic prostrating attacks of migraine or non-migraine headache pain. With regard to frequency, on average, of the prostrating attacks over the last several months, the examiner merely noted “with less frequent attacks.” The examiner also found that the Veteran did not have very prostrating and prolonged attacks of migraine or non-migraine pain productive of severe economic inadaptability. The Veteran reported that the migraine headaches cause her to have to extend her hours at work until the symptoms pass. 06/11/2015, C&P Exam. 

The VA treatment records reveal that, in November 2014, the Veteran reportedly experienced weekly migraine headaches, with symptoms largely identical to those described in the June 2015 VA examination. The Veteran also reported that the headaches cause chest and jaw pain and cause her to be unable to breath, requiring that she lie down flat and breath slowly for approximately one hour to recover. 06/15/2015, CAPRI, page 20.

The Board finds that the criteria for entitlement to a 30 percent rating have been more nearly approximated. The June 2015 VA examination noted that the Veteran did experience migraine headaches with a characteristic prostrating attack. Likewise, the examination report noted that migraine headaches occurred at least two to three times per month. The VA treatment records describe the headaches to cause the Veteran to become unable to breath and have to lie down for an hour to recover, plainly describes migraine attacks that typically produce powerlessness or a lack of vitality. Although the Board acknowledges that the June 2015 

VA examination noted that the attacks occurred with less frequency, the examiner did not explicitly indicate the frequency of the prostrating attacks. The Board notes that the Veteran is competent to report the frequency and describe the symptoms of her headaches. As these symptoms were considered to be prostrating, the Board finds that the criteria for a 30 percent rating were met. 38 C.F.R. § 4.3. Additionally, the Board notes and appreciates that the Veteran has submitted logs of her headaches from January 2017. The Board had considered such evidence when finding that the next-higher rating of 30 percent is warranted. 

As noted above, the rating criteria for a 50 percent disability rating under Diagnostic Code 8100 are conjunctive, meaning that establishing entitlement to a 50 percent disability rating requires evidence that a claimant’s migraine attacks are (1) very frequent, (2) completely prostrating and prolonged, and (3) “productive of severe economic inadaptability. The Board has considered entitlement to a 

50 percent rating, but the evidence does not show the Veteran’s headaches produced severe economic inadaptability. The Veteran reported that she is able to extend her hours at work until the symptoms pass. And, although the June 2015 examiner opined that the Veteran’s condition impacts her ability to work, 

the examiner found that Veteran did not have very prostrating and prolonged attacks of migraine or non-migraine pain productive of or capable of producing severe economic inadaptability. The Board finds such evidence to be competent and probative on the matter of whether the Veteran’s headaches are productive of severe economic activity as the Veteran’s relevant medical history was recorded and it is consistent with other evidence of record, to include treatment records and the log submitted by the Veteran. Additionally, an in-person examination of the Veteran was performed.

(Continued on the next page)

 

As the evidence shows the Veteran had characteristic prostrating headaches that occurred at least once a month, but as the final criterion of severe economic inadaptability needed for a 50 percent rating was not met, a 30 percent rating is warranted. 38 C.F.R. §§ 4.3, 4.124a, Code 8100. As such, the Board need not discuss the first two parts of the criteria for a 50 percent rating.

 

Paul Sorisio

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD D. Han, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.